UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SHERI A. KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:17-CV-72 NAB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations , ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Sheri A. Key's application for supplemental security income under the Social Security Act, 42 U.S.C. § 416, *et seq.* The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] Key alleged disability due to bipolar disorder, manic depression, obsessive compulsive disorder, degenerative disc disease, degenerative joint disease, migraines, learning disabilities, and mood swings. (Tr. 192.) Based on the following, the Court will affirm the Commissioner's final decision.

**I.      Background**

On November 6, 2014, Key applied for supplemental security income, alleging disability beginning November 5, 2014. (Tr. 171, 187.) The Social Security Administration ("SSA") denied Key's claim and Key filed a timely request for hearing before an administrative law judge ("ALJ"). (Tr. 90-96, 99-101.) The SSA granted Key's request for review, and an administrative hearing was held on July 28, 2016. (Tr. 48-75, 126-133.) Key, represented by counsel, testified

at the hearing. (Tr. 50-71.) Vocational expert, Michelle Peters-Pagella, also testified at the hearing. (Tr. 71-74.)

On August 25, 2016, the ALJ found Key not disabled as defined in the Social Security Act. (Tr. 18-29.) Key requested a review of the ALJ's decision from the Appeals Council. (Tr. 164.) On August 23, 2017, the Appeals Council denied Key's request for review. (Tr. 1-7.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Key filed this appeal on October 23, 2017. [Doc. 1] The Commissioner filed an Answer and the certified Administrative Transcript on December 27, 2017. [Docs. 11, 12.] Key filed a Brief in Support of the Complaint on January 24, 2018. [Doc. 13.] The Commissioner filed a Brief in Support of the Answer on April 19, 2018. [Doc. 18.] Key then filed a Reply Brief on April 20, 2018. [Doc. 19.]

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R.

§ 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 726 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the

law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

### III.     ALJ's Decision

The ALJ determined that Key had not engaged in substantial gainful activity since November 5, 2014. (Tr. 20.) The ALJ found that Plaintiff had the following impairments: depression, anxiety, bipolar disorder, and panic disorder with agoraphobia. (Tr. 20.) The ALJ also found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 21.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: (1) must avoid exposure to hazardous work environments; (2) avoid climbing ropes or ladders; (3) limited to remembering and performing out simple, routine tasks; (4) limited to making simple work-related decisions; (5) frequent contact with supervisors but only occasional contact with coworkers and the general public; (6) cannot perform any tasks that require tandem work with coworkers; and (7) work will be off-task ten percent of the workday. (Tr. 23.) Although the ALJ determined that Key was unable to perform any past relevant work, she opined that Key would be able to perform jobs that exist in significant numbers in the national economy. (Tr. 27-28.) Finally, the ALJ held that Key had not been under a disability, as defined by the Social Security Act, since November 6, 2014, the date the application was filed. (Tr. 28.)

## IV. Administrative Record

The following is a summary of relevant evidence before the ALJ:

**A. Hearing Testimony**

The ALJ heard testimony from Key and Michelle Peters-Pagella, the vocational expert ("VE"). (Tr. 48-75.) Plaintiff was represented by her attorney, Vicki Dempsey.

### 1. Key's Testimony

Key testified that she did not complete high school, but she passed the GED test. (Tr. 53.) She had a CNA certification at one time, but not anymore. (Tr. 55.) Most of her work was as a cashier and a CNA. (Tr. 54-57.) Key also testified that she was unable to work due to back and knee pain, sciatica, and she does not like being around a lot of people. (Tr. 57.)

Key testified that she suffered from daily back pain and spasms in her lower back and hips. (Tr. 62.) The muscle spasms last for fifteen or twenty minutes about two or three times per day. (Tr. 62, 66.) She can only sit for about fifteen minutes before starting to feel the hip pain. (Tr. 69.) She experiences trouble falling asleep and staying asleep. (Tr. 63.) She also experiences fatigue. (Tr. 64.) She testified that she experiences arthritis in her knees and that she wears braces on them, because her knees swell mostly in the winter. (Tr. 67.) She is able to dust, do dishes, the laundry, and make her bed. (Tr. 59.) Her cleaning is limited by the sciatica, because she doesn't bend well. (Tr. 59.)

Key also testified that she has suffered from mental illness for three years. (Tr. 58.) She was diagnosed with bipolar disorder in 2014. (Tr. 59.) She has been receiving monthly counseling treatment from Carol Greening, for about a year. (Tr. 59.) She has taken antipsychotic medicine for two years. (Tr. 68.) She has good and bad days, approximately four

bad days out of a seven day week. She testified that she has been suffering from agoraphobia all of her life and when she was working she avoided talking to or touching anyone. (Tr. 60.) Key also testified that her depression affected her daily and she had an obsessive-compulsive cleaning habit. (Tr. 62.)

Key testified that she lived in the same building with her mother, but had her own separate apartment that she shared with her seven-year-old son. (Tr. 57-58.) She testified that she usually leaves her apartment about three times per month for grocery shopping, doctors' appointments, and school functions. (Tr. 61.) Even though Key became nervous and needed to pull over when a semi-trailer truck passed by, she was able to drive by herself. (Tr. 64.) She does not allow her son to go outside of the house with other people. (Tr. 62.)

### 2. Vocational Expert Testimony

Michelle Peters-Pagella, a VE, testified regarding Plaintiff's vocational abilities and work history. (Tr. 71-74.) The VE identified Key's past relevant work as cashier and CNA. (Tr. 72, 273.) The VE testified that a hypothetical individual of Key's age, education, and work experience who could work at a full range of all exertional limitations, but had to avoid exposure to hazardous work environments; avoid climbing ropes or ladders; limited to remembering and performing simple, routine tasks; limited to making simple work-related decisions; frequent contact with supervisors but only occasional contact with coworkers and the general public; cannot perform any tasks that require tandem work with coworkers; and whose work will be off-task ten percent of the workday could not perform Key's past relevant work. (Tr. 72-73.)

The VE then testified that the hypothetical person could work as laundry worker, cleaner, and dishwasher. (Tr. 73.) The VE also testified that if the person missed more than two days a month at the identified jobs, this absence would preclude competitive employment. (Tr. 74.) If

the hypothetical person was off task 20 percent of the workday, the VE testified that this situation would also preclude employment for the identified jobs. (Tr. 73-74.)

    **B. Treatment Records**

Because Key is only challenging the RFC regarding her mental health impairments, the Court will not summarize the physical health records, except where it mentions any mental health treatment.

    **1. Psychiatric Evaluation authored by Dr. Lyle Clark and Board Certified Family Mental Health Nurse Practitioner Sandra Nolan**

On July 17, 2014, Dr. Lynn Walley, a gynecologist, advised Key that she should be evaluated, because she showed some features of being bipolar. (Tr. 334-35.) On September 22, 2014, Dr. Lyle Clark and Family Mental Health Nurse Practitioner Sandra Nolan evaluated Key for a psychiatric evaluation (Tr. 363-66.) Key reported that she was "getting more depressed." (Tr. 364.) She reported that she has had unstable moods since adolescence and a suicide attempt in 2002. Currently, Key described increasing fluctuation in her mood predominantly being depressed. (Tr. 363.) She also described symptoms of decreased appetite, fatigue, loss of energy, worthlessness, and problems with thinking and concentration. (Tr. 363.) She described more manic symptoms of decreased sleep, talkativeness, logorrhea, jumping subjects, racing thoughts, difficulty finishing things, working more hours, restlessness, spending sprees, and taking chances. (Tr. 363.) Key stated that she had panic episodes due to anxiety about being in situations where escape may be difficult. (Tr. 364.) Dr. Clark and nurse practitioner Nolan opined that her symptoms met the criteria for a diagnosis of Bipolar II Disorder, Mixed, Major Depressive Disorder, severe without psychotic features, and panic disorder with agoraphobia.

(Tr. 365.) Her global assessment of functioning ("GAF") score[1] was measured at 41, which indicated problems consistent with serious impairment in relationships with friends, serious impairment in mood, and serious impairment due to anxiety. (Tr. 365.)

### 2. Nurse Practitioner Sandra Nolan

Nurse practitioner Nolan directed Key's mental health medication management between October 2014 and April 2015. At the beginning of Key's treatment with Nolan. She presented with a depressed mood, agitated motor activity, and was described as unstable. (Tr. 357-58.) During Key's time under Nolan's care, her symptoms improved. At the time of her last visit with Nolan, her mental status was within normal limits. (Tr. 501-502.) Nolan described Key's psychiatric condition, mood, sleep, and anxiety as stable. (Tr. 502.)

### 3. Licensed Clinical Social Worker Marilyn Sue Frankenbach

On November 5, 2014, Key began counseling with licensed clinical social worker, Marilyn Sue Frankenbach based on a referral from nurse practitioner Nolan. (Tr. 346-56.) Frankenbach then performed a psychosocial history assessment of Key. (Tr. 346-56.) At the time of this consultation, Key was living at a battered women's shelter. (Tr. 346.) Key reported that she had a fluctuation in her moods, predominately depressed and periods of agitation and irritation. (Tr. 347.) She also reported crying easily, difficulty sleeping without medications, pressured speech and talkativeness, racing thoughts, difficulty finishing things, feelings of restlessness, and panic attacks. (Tr. 347.) Frankenbach diagnosed Key with bipolar II disorder, depressed, recurrent major depressive disorder, and panic disorder with agoraphobia and a GAF score of 45. (Tr. 349.)

---

[1] The GAF scale is "a numeric scale used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental-health illness." *Mabry v. Colvin*, 815 F.3d 386, 391 n. 6 (8th Cir. 2016) (citing *Pates-Fire v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2009)). "The scale ranges from zero to one hundred." *Id.* A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010).

Frankenbach treated Key from November 2014 until July 2015. (Tr. 342-43, 489-92, 498-500, 503-14.) During those treatment sessions Frankenbach described Key's progress as minimal. Key also did not visit Frankenbach between February 2015 and June 2015. (Tr. 498.) Key also was without her medication during the same time period. (Tr. 498.)

### 4. Nurse Practitioner Carol Greening

Nurse practitioner Carol Greening began directing Key's medication management in July 2015. (Tr. 493-97.) The record from Greening contains treatment records for six visits from July 2015 to March 2016. (Tr. 437-42, 447-58, 463-67, 475-79, 493-97.) Her mental status examinations during this time period indicate anxious or depressed mood, but otherwise a mental health status within normal limits. Greening diagnosed Key with major depressive disorder, recurrent, moderate, panic disorder without agoraphobia, and then later agoraphobia. She experienced one mental health medication adjustment, because the medicine caused her blurred vision. (Tr. 447.)

On April 26, 2016, Greening completed a Mental Medical Source Statement of Ability to Do Work-Related Activities regarding Key. (Tr. 427-29.) Greening identified that Key had mild limitations in understanding, remembering, and carrying out simple instructions and the ability to make simple work related decisions. (Tr. 427.) Greening opined that Key had marked limitations in understanding, remembering, and carrying out complex instructions and making judgment on complex work related decisions. (Tr. 427.) Greening also opined that Key had moderate limitations interacting appropriately with the public and marked limitations in interacting with the supervisors, co-workers, and responding appropriately to usual work related situations and to changes in a routine work setting. (Tr. 428.) Greening noted that Key had never been able to maintain long term employment due to anxiety and depression. She also

noted that Key experienced mood swings, irritability, difficulty completing tasks, and low energy and motivation. (Tr. 428.) Greening opined that, if employed full time, Key would miss work more than four days per month and would be off task twenty-five percent or more of the workday. She further opined that Key would need to take unscheduled breaks every 2 to 3 hours for forty minutes to one hour due to panic attacks and anxiety. (Tr. 429.)

### 5. Evaluation from State Agency Psychologist Barbara Markway, Ph.D.

On December 8, 2014, state agency psychologist Barbara Markway, Ph.D., reviewed Key's file. (Tr. 79-83.) Dr. Markway opined that Key experienced severe affective (depressive or bipolar) and anxiety disorders. (Tr. 79.) Based on the record up to November 2014, Dr. Markway determined that Key had mild restrictions in daily living and moderate limitations in maintaining social functioning, concentration, persistence, or pace. (Tr. 80.) Dr. Markway opined that Key retained the ability to understand, remember, and carry out simple work instructions, maintain adequate attendance and sustain an ordinary routine without special supervision, interact adequately with peers and supervisors with limited social contact, and could adapt to most usual changes common to a competitive work setting. (Tr. 83.)

### V. Discussion

Key asserts that the ALJ erred by giving little weight to her treating nurse practitioner Greening and assigning substantial weight to the opinion of Dr. Markway.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources.* Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment,

> (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 416.913(d)[2]. "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an acceptable medical source' for this purpose." SSR 06-03P, 2006 WL 2329939. The parties do not dispute the existence or type of Key's medically determinable impairments.

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. § 416.913(d). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider Greening's opinion in evaluating Key's impairments.

The ALJ stated that Greening's mental medical source statement with marked to extreme limitations were inconsistent with her treatment notes that show normal objective mental status examinations. (Tr. 26.) The ALJ also found the statement inconsistent with Key's conservative

---

[2] The Court notes that the social security regulations have changed effective March 27, 2017. Because this claim was filed in 2014, the Court will use the prior versions of the regulations effective at the time that Key's application for benefits was filed. *See* 20 C.F.R. §§ 416.913, 416.927 (version effective March 27, 2017).

pattern of treatment and expansive activities of daily living. (Tr. 26.) The ALJ assigned Greening's opinion little weight. (Tr. 26.)

Based on a review of the record as a whole, the Court finds that the ALJ did not err in assigning little weight to Greening's opinion. Greening's April 2016 medical source statement contained substantial limitations that are not supported by Greening's treatment notes or the other evidence in the record. For example, Key reported in her treatment sessions that her anxiety was minimal or mild and that she had not had any panic attacks during the time period in the treatment record. (Tr. 437, 447, 453, 463, 475, 493.) Greening's statement opined that Key would have panic attacks and anxiety every 2-3 hours during the workday. (Tr. 428.) Although Key reported that she had mild to moderate anxiety in large groups she was still able to go shopping and on outings. (Tr. 447.) The ALJ's RFC limits Key to simple, repetitive work with simple work-related decisions and limited her contact with supervisors, coworkers, and the general public. (Tr. 23.) These limitations are consistent with Greening and Dr. Markway's proposed limitations. Key's mental health was stable and improved substantially during the time period in the record. She even went for a period of time without receiving any medication or counseling. Key has not directed the court to any evidence that would provide additional support for Greening's very substantially limiting assessment. Therefore, the ALJ did not err in assigning little weight to Greening's opinion.

Next, Key asserts that Dr. Markway's opinion failed to reflect any condition or treatments after December 4, 2014, therefore, the ALJ erred by giving it significant weight. (Tr. 77-80.) "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20

C.F.R. § 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the determination of disability. 20 C.F.R. §§ 416.912(b)(1)(viii), 416.927(e)(2)(i). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists." 20 C.F.R. § 416.927(e)(2)(i). Their opinions are evaluated under the standards outlined in 20 C.F.R. § 416.927(c). It is true that this Court does not consider the opinions of a non-examining, consulting physician standing alone to be "substantial evidence." *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (finding that if no other evidence supported an ALJ's RFC determination, the opinion of a non-examining consulting physician was not "considered substantial evidence in the face of the conflicting assessment of a treating physician"). In this case, however, the ALJ did not solely rely on Dr. Markway's opinion to reach the conclusion. Dr. Markway's opinion was treated as part of the record, which as a whole provides substantial support for the ALJ's findings. (Tr. 24-25, 26.) When "[t]he state agency physicians' opinions were consistent with other medical evidence," the ALJ could "rely on them, in part, in formulating [a claimant's] RFC." *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Although Dr. Markway's opinion did not address Plaintiff's after December 2014, any error in assigning significant weight, was harmless. The ALJ also considered and discussed at length other later-received evidence when reaching her decision. (Tr. 24-25.) Dr. Markway's opinion and other evidence in the record are not inconsistent. Even if the ALJ had only given Dr. Markway's opinion some weight, the outcome of the case, would not have changed. Because any error by the ALJ in assigning significant weight was harmless, the Court will not reverse on this issue. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to

show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).

## VI. Conclusion

The ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* A review of the record as a whole demonstrates that Key has some restrictions in her functioning and ability to perform work related activities. However, Key fails to carry her burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). For reasons set forth above, the Court affirms the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 13, 19.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 12th day of February, 2019.

    /s/ Nannette A. Baker  
NANNETTE A. BAKER  
UNITED STATES MAGISTRATE JUDGE